UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRK BRANDS, INC., and<br>GARY J. MORRIS, PH.D.,<br><br>                  Plaintiffs,<br><br>   v.<br><br>NEST LABS, INC.,<br><br>                  Defendant. | Civil Action No.: 13-cv-7900<br><br>Honorable Richard A. Posner |

**DEFENDANT NEST'S RESPONSE TO PLAINTIFFS' MOTION TO
ENFORCE THE COURT'S ORDER OF MARCH 24, 2014**

Defendant Nest Labs, Inc. ("Nest"), by and through its undersigned counsel, respectfully responds to BRK Brands, Inc. ("BRK") and Gary J. Morris, Ph.D.'s (collectively, "Plaintiffs") Motion to Enforce the Court's Order of March 24, 2014 ("Plaintiffs' Motion"). Plaintiffs' Motion is simply another attempt to disrupt and delay the orderly progression of this case, consistent with their refusal to provide constructions for any terms according to the deadline set in the very same Order they now claim to be seeking to enforce. *See* Defendant Nest Labs Inc.'s Motion To Bar Plaintiffs From Proposing New Claim Terms Or Claim Constructions (D.I. 129) (detailing the Plaintiffs' conduct during the exchange of claim terms). Plaintiffs' Motion lists the terms Nest proposed for construction, but the body of Plaintiffs' Motion does not include the constructions, which show that Nest is proposing a single construction in each case and that the bracketed language was provided for context rather than for construction. *See* Plaintiffs' Motion, Ex. A (D.I. 130-1) at 3-5. In fact, beyond supplying an incomplete and misleading chart of Nest's proposed terms, Plaintiffs offer virtually no explanation as to why Nest's list of proposed

1

terms is improper. Nest's proposed list of terms for construction includes nine (9) terms, one fewer than the maximum ten (10) terms detailed in the Court's March 24, 2014 Order.[1]

Moreover, Plaintiffs' Motion ignores the fact that the terms grouped by Nest are substantively and functionally identical. Whether by design or happenstance, the claims of the five Morris patents-in-suit, U.S. Patent Nos. 6,144,310 ("the '310 patent"); 6,600,424 ("the '424 patent"); 6,784,798 ("the '798 patent"); 7,158,040 ("the '040 patent"); 6,323,780 ("the '780 patent") (collectively, the "Morris Patents"),[2] use an assortment of slight variations in wording to claim the same invention. For example, in referring to the space between groups of tones on the tonal alarms, the claims use several different terms such as "predetermined silent intervals," "predetermined silent period," "first interval" or "second interval." From the context of the claims and specification, it is clear that these terms all have the same meaning. Even Plaintiffs cite to the same text in the specification of the patents-in-suit as support for these terms. *See* Plaintiffs' Response to Nest's Invalidity Contentions (Exhibit 2 hereto) at p. 18 (citing identical passage in '310 patent because the '780 patent incorporated by reference the disclosure of the '310 patent, which shares the same specification as the '424 patent). Yet Plaintiffs assert in their motion that the Court should count each as a separate term for construction. That would result in duplication and redundancy in the briefing and inefficiency for the Court.

Nest raised this issue with Plaintiffs during the meet and confer, which occurred only an hour before Plaintiffs filed their motion. Despite Nest's request, Plaintiffs failed to identify any

---

[1] As explained below, Nest has not proposed more than 10 terms for construction. To the extent the Court disagrees, however, Nest respectfully requests that the Court grant Nest the opportunity to present all the terms proposed for construction to avoid the possibility of disputes later regarding whether the Court's construction applies to similarly worded claims. Moreover, in this case, where there are six patents, there is good cause for permitting Nest to present each of these claim construction issues.

[2] For the Court's convenience, all six patents-in-suit are attached hereto collectively as Exhibit 1.

2

meaningful difference between the grouped terms and does not do so in their brief. Plaintiffs' Motion should be denied because the proposed terms and constructions appropriately identify nine outstanding claim term disputes, which collectively are case-dispositive.

## ARGUMENT

This lawsuit involves alleged infringement of six (6) patents for smoke and carbon monoxide alarm products. Five of the six asserted patents are related and present some common issues across these patents. Four of the asserted patents, the '310, '424, '798, and '040 patents, purportedly claim the same invention and share a common specification; the fifth, the '780 patent, is a continuation-in-part of the '310 patent and incorporates by reference this common specification. Plaintiffs' assertion that parts of claims that use slightly different words cannot have the same construction is simply wrong. Patents frequently claim overlapping subject matter using different words. *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007) ("Even though the 'composite composition' claims, as construed by the district court, cover substantially the same subject matter that is covered by the 'pellet' and 'linear extrudate' claims, overlapping patent claims are not unusual, and . . . does not require us to construe the 'composite composition' claims to cover subject matter that differs from the subject matter covered by the other two sets of claims."); *see also Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006) (claim differentiation is less compelling in the context of different independent claims because claim drafter may use different words to describe exactly the same subject matter and claim differentiation cannot broaden claims beyond their correct scope).

Pursuant to the Court's Order ("Order"), on March 24, 2014, and L.P.R. 4.1, Nest timely served Plaintiffs with its proposed list of twenty-six claim terms and proposed constructions.

3

Although BRK served no constructions, Nest nonetheless followed the Court's Order and the Local Patent Rules to narrow the disputed terms, arriving at the current list of nine terms (9) for construction. Consistent with a streamlined, orderly resolution of this case as required by the Court's Order and Local Patent Rules, Nest specifically identified terms that would be subject to common constructions "*to focus upon outcome determinative or otherwise significant disputes*." *See* Comment to L.P.R. 4.1 (emphasis added).

Plaintiffs, in contrast, seek to disrupt and delay. Consistent with their refusal to timely provide constructions, Plaintiffs now complain that Nest's efforts to streamline the case and present organized and common disputes together somehow violates the Court's Order. Plaintiffs would seek to prevent the Court from addressing these common issues together in claim construction only to be left for potential dispute later as part of expert discovery. D.I. 130-1 at 8 (email from Ravi Deol dated April 24, 2014). Nest offers a few examples to illustrate Plaintiffs' improper tactics and to demonstrate that Nest does not propose more than nine (9) disputed terms.

During the parties' call on April 25, Plaintiffs declined to identify specific issues, and BRK's counsel was unable to respond to specific inquiries from Nest regarding why certain phrases did not represent a common term for construction. For example, Nest asked Plaintiffs to explain why terms such as those listed as disputed term 5 (D.I. 130-1 at 4)[3] were not appropriate for common construction. As shown in the very listing for term 5 (*id.*), each of these phrases addresses silent intervals or silent periods in the tonal alarm patterns (*see, e.g.*, '310 Fig. 4, item 90). The context of the claim language makes clear that, in each instance, these words all refer

---

[3] When referring to disputed terms by number below, Nest refers to the numbers provided in D.I. 130-1 at 3-5 as these also contain the proposed constructions, rather than Plaintiffs' renumbering of these terms in its brief.

4

to the larger silent interval between groups of tones (the intergroup silent period (item 90 in Fig. 4)) rather than the spacing between individual tones. This is most aptly demonstrated by comparing the claim language from '424 patent claim 9 and '780 patent claim 54 ("[some of the tones/groups of tones are spaced apart by a] **first time interval** [and wherein others of the tones are closer together]"), with the claim language from '424 patent claim 7 and '798 patent claim 19 ("[groups of tones are spaced apart by] **silent, longer second time intervals**"). D.I.130-1 at 4 (emphasis added). Although one group of claims refers to the "first" time interval and the other group of claims refers to a "second" time interval, both refer to the larger silent period between groups of tones rather than the smaller silent period between individual tones in a group. As the bracketed language above makes clear, both phrases refer to when the tonal pattern is silent because they expressly refer to the interval between groups of tones. The change in numbering between calling them first or second intervals is merely a result of reordering how they are referenced in the claims. Thus, consistent with the purpose of the rules and the Court's Order to streamline the case by focusing on common and potentially dispositive issues, Nest identified this as a single disputed term. When Nest's counsel pointed this out to Plaintiffs during the April 25 call, counsel for BRK indicated that he did not have the patents in front of him and could not answer the question.

Likewise, all of the phrases in term 7 (D.I. 130-1 at 4) relate to emitting or outputting a message in the silent intervals between groups of tones as reflected by the very language of the claims that is not bracketed (the bracketed language from the claims was provided for context). To the extent that, once again, one of these phrases refers to the second time intervals, these arise from the very same claims referred to above with respect to term 5. Again, there is no basis to

5

treat these phrases separately for purposes of claim construction, nor have Plaintiffs provided any such basis.

By way of another example, term 1 proposed by Nest refers to "settable members," "selectable coding circuits," and "alarm code selectors," for selecting either the language or the location that will be used for voice messages. *Id.* at 3. These refer to the same disputed term – the mechanism for making the selection. As the bracketed language illustrates, the disputed term does not concern whether it is language, location or a code that is being selected. Rather, as reflected by Nest's construction, the inquiry concerns what mechanism is provided for selection. In each case, the supporting disclosure in the patents for selection is the same; the patents uniformly disclose what are called "DIP switches" or "jumper wires" for the user to make such a selection, whether it be for selection of language or location. *See, e.g.*, '424 Patent Fig. 7 and '780 Fig. 8 (for examples of *location* selection); '424 at 4:27-29 ("User-selectable coding switches or jumpers permit the user to define the physical *location* of the single station unit within the dwelling."); 424 at 6:24-26 ("A *language* code selector (jumper set or DIP switch) 60 is used to choose the language type (English, Spanish, etc.) used by the recorded voice.") (emphasis added). In fact, in response to Nest's invalidity contentions that the claim language "[circuit/circuitry] to provide for the selection of language type presentation . . ." in claims 4 and 12 of the '780 patent was unsupported, Plaintiffs specifically pointed to the same passage quoted above from the '424 patent (6:24-26) as supporting both terms. *See* Exhibit 2 at p. 18 (citing identical passage in '310 patent because the '780 patent incorporated by reference the disclosure of the '310 patent, which shares the same specification as the '424 patent). Having identified the exact same supporting passage for these terms, it is disingenuous for Plaintiffs to contend they mean something different.

6

The same is true, for example, with respect to term 4 (D. I. 130-1 at 3), which refers to the mechanism for selecting the radio frequency for wireless communication between detectors. Although the dispute concerns the mechanism for making the frequency selection and the specifications disclose the very same DIP switches or jumper wires for making this selection, in the interest of clarity, Nest grouped this term separately from term 1 since it did not concern the voice messages, but rather the selection of the frequency used to communicate between detectors. *See, e.g.*, *id.* at 3 (term 4).

Similarly, for term 20 in Nest's proposed list (*id.* at 5), which refers to the "control electronics," "control elements" and "electronic circuit," the plain language of the asserted claims indicate that these terms are consistently and interchangeably used to refer to the discrete hardware elements that trigger the playing of voice messages during silent periods as reflected in Nest's proposed construction. *See* '310 at 13:29-33 & '040 at 8:36-40 ("<u>control electronics</u>…outputs… the tonal patterns and an interleaved respective verbal alarm type message in a respective silent interval"); '798 at 8:34-37 ("<u>control electronics</u>…causes the audible tonal pattern to be emitted and causes the selection location message to be repetitively emitted); '424 at 8:37-39 ("<u>control electronics</u>…emits the audible tonal pattern and repetitively emits the verbal alarm-type message in respective silent intervals"); '424 at 9:9-13 ("<u>control electronics</u>…emits the audible tonal pattern and repetitively emits the verbal alarm-type message in respective silent intervals"); '798 at 9:42-44 & ' 424 9:45-48 ("<u>control element</u> repetitively injects the stored fire indicating word into only the second time intervals between groups of fire alarm indicating tones"); '424 at 14:5-8 ("<u>electronic circuit</u> repeatedly verbalizes the…location message during at least some of the silent periods") (emphasis added). The patents all disclose the same support for this hardware, which includes Interface and Control Unit (20) that contains

what the patents refer to as a "monostable multivibrator" (21) (i.e., a discrete hardware element) to control the timing for playing recorded voice messages. *See, e.g.*, '310, Figs. 2 & 3, 5:63-6:5, 6:45-61, 7:8-15. Thus, there is no basis to treat these words as separate disputed claim terms.

Plaintiffs cannot seriously contend that any one of terms 15, 22, 23 or means-plus-function term 1 constitute more than one disputed term. Inspection of these terms instantly dispels any notion that these could be more than one term each (*see* D.I. 130-1 at 4-5) and Plaintiffs make no such argument to the contrary.

## CONCLUSION

Plaintiffs' motion should be denied because Plaintiffs have not identified how the groups of terms for construction constitute more than 10 terms. As demonstrated above, there are at most nine terms for construction. Plaintiffs cite no authority to support the relief they seek and the authority they do cite is irrelevant. In short, Plaintiffs fail to identify a true dispute or address why Nest's grouping of these functionally equivalent phrases is improper. Because Nest has properly grouped claim phrases for common treatment in an effort to streamline issues for the Court, Plaintiffs' motion should be denied.

DATED: April 28, 2014　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ John Letchinger*

　　　　　　　　　　　　　　　　　　　　John Letchinger (#6207361)
　　　　　　　　　　　　　　　　　　　　Baker & Hostetler LLP
　　　　　　　　　　　　　　　　　　　　191 North Wacker Drive
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606-1901
　　　　　　　　　　　　　　　　　　　　(312) 416-6206
　　　　　　　　　　　　　　　　　　　　Fax: 312-416-6260

　　　　　　　　　　　　　　　　　　　　Kevin X. McGann (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Jeffrey J. Oelke
　　　　　　　　　　　　　　　　　　　　John P. Scheibeler (*pro hac vice*)

        John P. Padro (*pro hac vice*)
        Vigen Salmastlian
        White & Case LLP
        1155 Avenue of the Americas
        New York, NY 10036
        (212) 819-8200

        Marcus E. Sernel, P.C. (#6243853)
        David Rokach (#6279703)
        Reid P. Huefner (#6291648)
        Louis A. Klapp (#6303722)
        Kirkland & Ellis LLP
        300 North LaSalle
        Chicago, Illinois 60654
        Tel.: (312) 862-2000
        Fax: (312) 862-2200
        msernel@kirkland.com
        drokach@kirkland.com
        rhuefner@kirkland.com
        louis.klapp@kirkland.com

        *Attorneys for Defendant Nest Labs, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2014, I electronically filed the foregoing Defendant Nest's Response to Plaintiffs' Motion to Enforce the Court's Order of March 24, 2014 with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

        By:  */s/ John Letchinger*

        John Letchinger (#6207361)
        Baker & Hostetler LLP
        191 North Wacker Drive
        Chicago, IL 60606-1901
        (312) 416-6206
        Fax: 312-416-6260

        *One of the Attorneys for Defendant Nest Labs, Inc.*